## FROST ET AL. vs. BARNES.

| 47 | 279 |
| 128 | 434 |

[STATUTORY PROCEEDING FOR ERECTION OF PUBLIC GRIST-MILL.]

1. *Inquest of jury ; requisites of.*—In a statutory proceeding for authority to erect a public grist-mill, (Revised Code, §§ 2481-2503,) it is not necessary that the inquest of the jury should be unanimous : if it is signed by a majority of the jurors, and otherwise conforms to the requisitions of the statute, it is sufficient.

2. *Sufficiency of evidence.*—On appeal from a decree of the probate court, authorizing the erection of a dam for a public grist-mill, (Rev. Code, §§ 2481-2503,) the judgment of the court below will not be disturbed, when it appears to be sustained by a preponderance of the evidence.

APPEAL from the Probate Court of Butler.
Tried before the Hon. H. W. WATSON.

This was an application by J. M. Barnes, (under chapter 3, title 6, part 2, of the Revised Code,) for authority to erect a dam across Hall's creek in said county, for the purpose of establishing a public grist-mill; which application was contested by Henry Frost and others. A jury of inquest was summoned, who reported in favor of the proposed dam; but their report was only signed by four of the seven jurors, the others adding conditions and restrictions to their signatures, as stated in the opinion of the court. On all the evidence adduced, the court below granted the application; and its judgment, with other matters, is now assigned as error.

GAMBLE & POWELL, for appellants.
HERBERT & BUELL, *contra.*

PETERS, J.—This is an appeal from the decree in a proceeding on an application before the judge of probate of Butler county, for the privilege of erecting a dam for a water grist-mill, to grind for toll, across a certain watercourse in said county, not being a navigable stream. The

privilege to erect the dam was allowed by the court, and the parties who contested the application bring the case to this court for review.

The errors assigned raise objections to the sufficiency of the inquest of the jury, on the writ of *ad quod damnum,* returned into the court below, and to the force of the evidence to show that the health of the neighborhood will not probably be endangered by the erection of the dam proposed. This inquest of the jury is strictly formal, and in full compliance with the requirements of the statute; but it is signed by only four of the jurors, out of the seven. The other members of the jury assent to this inquest of the majority, in these words, to-wit: "We, the undersigned, assent to the foregoing declarations," (the inquest,) "except the third (3d). To this we assent with the following qualifications: we do believe that the erecting of a mill at the point above described will endanger, in some degree, the health of the surrounding neighborhood, but not in an unusual or extraordinary degree; and we further believe that, inasmuch as the mill and dam hereinbefore mentioned have already been erected, their removal would be more hurtful to the health of the neighborhood, for the immediate future at least, than their continuance would be." On the proper return and notice of this inquest, the contestants appeared, and moved to quash it, and also demurred to it. Both of these objections were overruled by the court, and the contestants excepted. In this there was no error.

The inquest of the jury is *ex parte,* and not final. It is but a part of the process to reach the issue upon the merits. It is not required to be unanimous, as the verdict of a jury on the trial of an issue in a court of law, but it may be only the inquest of the majority. If it is sufficiently formal, and signed by a majority of the jury, this is enough. Rev. Code, § 2492. After it is returned into court, if in sufficient form, the court makes up the issue upon it required by the statute. And for this purpose, after the parties interested have due notice, the law directs, " If, on the day appointed to show cause, or any other day to which

Frost et al. v. Barnes.

the matter may be continued, it appear to such judge, from the inquest, or from any other evidence, that the residence of any owner, or the out-houses, enclosures, garden, or orchard, immediately belonging thereto, will probably be overflowed, or that the health of the neighborhood will probably be endangered, or any other mill or water-works probably overflowed, the judge must not grant the application; but if such results are not likely to ensue, the application must be granted."—Rev. Code, § 2495. Upon the "results" thus referred to there was no serious controversy, except two. The one was the overflow of other mills or other water-works, and the other was the effect upon "the health of the neighborhood."

In reference to the first result there needs little to be said. The proof shows that the only other mill or water-works, upon the stream on which the dam was sought to be erected, was above a mile below the place of erection, and the water could not pass to it without passing over the dam proposed to be erected. This was not in a situation to be overflowed, in the manner intended by the statute. The overflowing contemplated by the statute is that which is occasioned by the stoppage of the water of the stream by the dam, and forcing it back upon some structure above it, or the forcing it out of the banks, so as to overflow some point above or below the dam itself. Here the proof showed that the mill below the dam was occasionally flooded by the too rapid escape of the water above. If this was negligently or designedly done by the owner of the upper mill, it might subject him to an action for damages, but it would not be the overflowing intended by the statute. The proof upon this point was not such as would justify a refusal of the application.

The other question, as to the effect of the dam upon the health of the neighborhood, is one of much more difficulty, both because of the obscurity of the proofs upon the question of health, and the uncertainty of what really constitutes a "neighborhood." In such a case as this, the court may look, in settling the question, both to the "inquest"

of the jury, and to " any other evidence " which may be competent.—Rev. Code, § 2492, *supra*. The " inquest " is the result of a very grave and serious examination of the same questions on which the court is called to act. The jury who make it are disinterested and responsible citizens of the county, if not of the immediate neighborhood.—Rev. Code, § 2486. In their office, they act under oath, and become the unbiased representatives of the interests of the neighborhood committed to their examination. It would be a shameful betrayal of their trust and their oath to act falsely. This is not to be presumed. It may be for this reason that the statute lays so much stress upon the value of their inquest as evidence. It is thus made evidence of a very high grade, but not conclusive, if contested.

In this case there is much intelligent evidence, which supports the conclusions of the jury; and although this was much contested by other evidence of a persuasive nature, yet it does not appear to me that the learned judge, in his decree, mistook the preponderating force of the evidence on behalf of the applicant in the court below. Testimony upon the question of health and sickness is never very conclusive. Much of it is mere guess. Eminent physicians are often very much at variance among themselves upon such questions. It is not shown how large the community which constituted the neighborhood of the dam or mill-pond is, nor how the dam would affect the health of that whole community. It is certainly not shown that the health of the whole community, or the larger portion of it, would be injuriously affected by the erection of the proposed dam ; yet it is the whole community, or the larger portion of it, that must have its health endangered, before the privilege to erect the dam can be denied. This is the language, and, I think, the meaning of the statute as above quoted. Some of the witnesses declared, that in the same neighborhood near the proposed mill-dam there was, in some families, more sickness before the dam was erected than there was afterwards. Others declared that in other places the contrary was the case. No doubt both sets of witnesses deposed the truth. But it could not be true that the mill-dam was the offend-

ing cause of the sickness in both cases. It certainly was not the cause in the first case, as it did not then exist; and it is but little better than a mere conjecture to say that it was the cause in the second. It is, in a great measure, but a guess. Taking the issue to apply to the health of the whole neighborhood, and the inquest and whole testimony into consideration, I am of opinion that the learned judge in the court below decided according to the preponderance of the evidence. If he did, his judgment should not be disturbed.

The judgment of the court below is, therefore, affirmed, with costs.